# United States Court of Appeals for the Federal Circuit

2006-7304

LOUISE ALPOUGH,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Henry C. Su, Howrey LLP, of East Palo Alto, California, argued for claimant-appellant. Of counsel on the brief was Michael P. Horan, Paralyzed Veterans of America, of Washington, DC.

Claudia Burke, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Brian M. Simkin, Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Amanda R. Blackmon, Attorney, United States Department of Veterans Affairs, of Washington DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Alan G. Lance, Sr.

# United States Court of Appeals for the Federal Circuit

2006-7304

LOUISE ALPOUGH,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  June 18, 2007

_____

Before MICHEL, <u>Chief Judge</u>, DYK, <u>Circuit Judge</u>, and GARBIS, <u>Senior District Judge</u>.[*]

DYK, <u>Circuit Judge</u>.

Appellant Louise Alpough ("Louise") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court").  The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("Board") denying Louise's claim for Department of Veterans Affairs ("VA") surviving spouse benefits.  We conclude that the Veterans Court erred in holding that Louise's mutually agreed separation from her husband before his death automatically disqualified her from recognition as a surviving

---

[*]     Honorable Marvin Garbis, Senior District Judge, United States District Court for the District of Maryland, sitting by designation.

spouse. We vacate the Veterans Court's decision and remand for consideration under the correct legal standard.

BACKGROUND

Louise's husband, Joseph L. Alpough ("Joseph"), served on active duty in the United States military from 1954-1956. He married Louise on July 23, 1960, and they had two children. In 1970, the Alpoughs separated, and Joseph moved in with his mother in Port Arthur, Texas while Louise and the children lived in Houston. In October 1972, Joseph filed a claim for service connection for stomach problems, including stomach cancer. In doing so, he indicated that he had been separated from Louise since 1970 because he "could not get along" with her. J.A. at 36. He died in December 1972 from stomach cancer. In February 1973, Louise filed an application for dependency and indemnity compensation ("DIC") benefits as a surviving spouse. Her application indicated that she had not lived with Joseph continuously from their marriage until his death and that they separated because they "[c]ould not get along as husband and wife." J.A. at 80. The VA regional office denied Louise's claim in September 1973, concluding that she was not "the legal widow of Mr. Joseph Alpough as they mutually agreed to live apart and there was no intention of their resuming their relationship as husband and wife." J.A. at 88.

Louise made repeated attempts to reopen her claim by submitting evidence she claimed was new and material. In a January 14, 2003, decision the Board concluded that new evidence submitted by Louise, which indicated that the separation was due to Joseph's illness rather than incompatibility, was sufficient to reopen Louise's claim to DIC benefits. However, the Board concluded that the separation was not caused by

2006-7304                                                    2

Joseph's illness, finding that the new evidence that the separation was caused by illness was not as probative as contemporaneous statements that the separation was due to mutual incompatibility. It therefore held that Louise "was not without fault in the separation" and denied her claim. Appeal of Alpough, No. 01-00 166A, slip op. at 2, 9 (B.V.A. Jan. 14, 2003) ("Board Decision").

On January 18, 2006, the Veterans Court affirmed the Board's decision, relying on its earlier decision in Gregory v. Brown, 5 Vet. App. 108 (1993).[1] In doing so, the Veterans Court held that "[s]ince the appellant has explicitly conceded in her brief that the separation was by mutual consent without the fault of either party, she cannot prevail because the law and the regulation make an exception only for a separation caused by the veteran's misconduct." Alpough v. Nicholson, No. 03-761, slip op. at 4-5 (Vet. App. Jan. 18, 2006) ("Veterans Court Decision").

Louise timely appealed. We have jurisdiction pursuant to 38 U.S.C. § 7292(c).

DISCUSSION

At the outset, we must consider the government's contention that "Alpough has not raised any claims over which this Court may exercise its limited jurisdiction." Appellee's Br. at 7. We disagree. We have "jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section." 38 U.S.C. § 7292(c). Louise argues that the Veterans Court misinterpreted 38 U.S.C. § 101(3) and 38 C.F.R. § 3.53(b) by requiring her to prove

---

[1] Gregory invalidated an earlier version of 38 C.F.R. § 3.53(a) that stated lack of fault on the part of the surviving spouse satisfied the "continuous cohabitation" requirement. Gregory, 5 Vet. App. at 111-12. The Veterans Court held that this provision conflicted with the statute's requirement that the spouse be free of fault and the separation be "due to the misconduct of, or procured by, the veteran." Id. at 112.

"misconduct" on the part of her spouse in order to be accorded surviving spouse status. Louise's challenge to the Veterans Court's interpretation of the statute and its accompanying regulation are clearly within our jurisdiction. See Forshey v. Principi, 284 F.3d 1335, 1359 (Fed. Cir. 2002) (en banc) (superseded on other grounds by Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (2002)) ("We hold that we have jurisdiction over . . . issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation."); Morgan v. Principi, 327 F.3d 1357 (2003) (noting that the "amendment enacted by Congress [made] review of 'a decision of the [Veterans] Court on a rule of law' a separate jurisdictional basis"); see also, e.g., Carpenter v. Nicholson, 452 F.3d 1379, 1382-83 (Fed. Cir. 2006). The government's argument that we lack jurisdiction is meritless.

Under 38 U.S.C. § 101(3), a person is a "surviving spouse" entitled to DIC benefits if he or she: (1) is of the opposite sex of the veteran; (2) is the spouse of the veteran at the time of the veteran's death; (3) has lived with the veteran continuously from the date of marriage to the date of the veteran's death (the "continuous cohabitation" requirement); and (4) has not remarried or lived with another person and held himself or herself out publicly as the spouse of that person.[2] However, the statute

---

[2] Section 101(3) provides:

The term "surviving spouse" means (except for purposes of chapter 19 of this title) a person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried or (in cases not involving remarriage) has not since the

makes an exception to the "continuous cohabitation" requirement "where there was a separation which was due to the misconduct of, or <u>procured by</u>, the veteran without the fault of the spouse." <u>Id.</u> (emphasis added). The VA has interpreted this statutory provision and directly addressed separations by mutual agreement, stating:

> If the evidence establishes that the separation was by mutual consent and that the parties lived apart for <u>purposes of convenience</u>, health, business, <u>or any other reason which did not show an intent on the part of the surviving spouse to desert the veteran</u>, the continuity of the cohabitation will not be considered as having been broken.

38 C.F.R. § 3.53(b) (emphases added).[3]

In holding here that Louise's "separation . . . by mutual consent without the fault of either party" prevented her from qualifying as a surviving spouse, the Veterans Court stated that "the law and the regulation make an exception [to the 'continuous cohabitation' requirement] <u>only</u> for a separation caused by the veteran's misconduct." <u>Veterans Court Decision</u>, slip op. at 4-5 (emphasis added). This approach—requiring a showing of misconduct by the veteran—is contrary to both the statute and the regulation interpreting it. The statutory exception is not limited to "a separation which was due to

---

death of the veteran, and after September 19, 1962, lived with another person and held himself or herself out openly to the public to be the spouse of such other person.

[3] Section 3.53(b) provides:

Findings of fact. The statement of the surviving spouse as to the reason for the separation will be accepted in the absence of contradictory information. If the evidence establishes that the separation was by mutual consent and that the parties lived apart for purposes of convenience, health, business, or any other reason which did not show an intent on the part of the surviving spouse to desert the veteran, the continuity of the cohabitation will not be considered as having been broken. State laws will not control in determining questions of desertion; however, due weight will be given to findings of fact in court decisions made during the life of the veteran on issues subsequently involved in the application of this section.

the misconduct of . . . the veteran." 38 U.S.C. § 101(3). It also includes an exception for a separation "procured by" the veteran. Id.

While the statute is clear that "misconduct" by the veteran is not required, the statute is unclear whether a separation by mutual agreement is one "procured by" the veteran. Contrary to the government's suggestion, the dictionary definition of "procure" does not require unilateral as opposed to joint action. See Webster's Third New International Dictionary 1809 (2002) ("to cause to happen or be done: bring about: effect <[e.g.,] *procured* temporary agreement>"). Since the statute itself is ambiguous, we defer to the VA's interpretation in its implementing regulations if that interpretation is reasonable. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984). The express terms of the regulation provide that the continuity of cohabitation will not be considered broken if "the separation was by mutual consent and . . . the parties lived apart" for purposes of convenience or for certain other specified reasons or for "any other reason which did not show an intent on the part of the surviving spouse to desert the veteran." 38 C.F.R. § 3.53(b). In other words, the key is whether the reason for the separation "did not show an intent on the part of the surviving spouse to desert the veteran." Id. (emphasis added).

"Desertion" is not defined in the regulations. See 38 C.F.R. § 3.1. However, the term is well-defined in the common law in the family law context. The edition of Black's Law Dictionary in effect on the date of the regulation's adoption in 1961, see 26 Fed. Reg. 1567 (Feb. 24, 1961), defines "desertion" as the "unauthorized" abandonment of "a station or condition of public or social life" and explicitly states that "[i]n [m]atrimonial and [d]ivorce [l]aw," desertion "occur[s] without legal justification either in the consent or

the wrongful conduct of the other party." Black's Law Dictionary 532-33 (4th ed. 1951) (emphases added).[4] In other words, generally a mutually agreed separation does not constitute desertion. Similarly, state supreme courts, at the time the regulatory language was added, clearly recognized that "[m]ere separation by mutual consent is not a desertion by either party." Arrington v. Arrington, 82 S.E.2d 548, 551 (Va. 1954); see also, e.g., Martin v. Martin, 284 S.W. 2d 647, 649 (Ark. 1955); Parker v. Parker, 63 A.2d 211, 212 (R.I. 1949); Kidman v. Kidman, 164 P.2d 201, 202-03 (Utah 1945); 27A C.J.S. Divorce § 68 (2007) ("[S]eparation by mutual consent does not constitute desertion . . . unless such consent has been induced by the other spouse's misconduct or determination to end the marriage."); 23 Am. Jur. 2d Desertion and Nonsupport § 3 (2007).

The Supreme Court has made clear that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." Nat'l Labor Relations Bd. v. Amax Coal Co., 453 U.S. 322, 329 (1981). A similar approach applies to the construction of undefined terms in regulations. See Siemens Power Transmission & Distrib., Inc. v. Norfolk S. Ry. Co., 420 F.3d 1243, 1252 (11th Cir. 2005) ("[W]e should interpret statutes and regulations in light of their common-law backdrop."); Sw. Bell Tel. Co. v. Fed. Commc'n Comm'n, 19 F.3d 1475, 1480 (D.C. Cir. 1994) (relying on the common law of carriers to define the term "common carrier" as it appeared in the statute and regulations); see also Am. Express v. United States, 262

---

[4] See also Black's Law Dictionary 478 (8th ed. 2004) (stating that "[i]n family law, [one of] the five elements of spousal desertion" is "a lack of consent from the abandoned spouse").

2006-7304                                    7

F.3d 1376, 1381 n.5 (Fed. Cir. 2001) ("It is appropriate to consult dictionaries to discern the ordinary meaning of a term not explicitly defined by statute or regulation."). Thus, we may presume that the VA, in using the term "desert" while providing no definition for the term, intended to invoke the well-established meaning of "desert" in family law.[5] A separation by mutual consent generally does not constitute desertion, and therefore the Veterans Court misinterpreted § 3.53(b) when it held that Louise was not exempted from the "continuous cohabitation" requirement because her "separation was by mutual consent without the fault of either party."

The government suggested at oral argument that our interpretation would render meaningless the regulation's requirement "that the parties lived apart" for reasons "which did not show an intent on the part of the surviving spouse to desert the veteran" because any separation by mutual consent would qualify as continuous cohabitation. We disagree. A separation by mutual consent does constitute desertion under general family law principles if the "consent has been induced by the other spouse's misconduct or determination to end the marriage." 27A C.J.S. Divorce § 68 (2007); see also, e.g., Moran v. Moran, 149 A.2d 399, 402 (Md. 1959); Ex Parte Cox, 160 So. 230, 232 (Ala. 1935). Thus, any time the mutuality of consent was the result of an intent to desert by the spouse (i.e., the spouse induced the separation by misconduct or by communicating

---

[5]        Section 3.53(b) does say that "[s]tate laws will not control in determining questions of desertion." However, this is evidently designed to preclude reference to specific laws of the veteran's particular state. The statement that "[s]tate laws will not control" serves to distinguish the way in which a "surviving spouse" is determined under § 3.53(b) from the way in which the validity of a marriage is determined under 38 C.F.R. § 3.1(j). The latter section relies on "the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued." 38 C.F.R. § 3.1(j). Here we rely on the general common law meaning of the term "desert" rather than looking to the law of any particular state.

a definite intent to end the marriage) there would be a separation by mutual consent but also an intent to desert. Therefore, under § 3.53(b), the veteran's spouse would not be exempted from the continuous cohabitation requirement. In sum, a separation by mutual consent does not constitute desertion unless the separation resulted from misconduct or communication of a definite intent to end the marriage by the surviving spouse.

Since we think the regulation as properly construed forecloses the interpretation offered by the government (that separation by mutual consent is not exempted from the "continuous cohabitation" requirement), we need not reach the government's assertion that the agency has provided an interpretation of its own regulation that is entitled to deference. See Christensen v. Harris County, 529 U.S. 576, 588 (2000) ("[D]eference is warranted only when the language of the regulation is ambiguous.").[6]

In summary, under a proper interpretation of the statute, 38 U.S.C. § 101, a spouse can qualify as a surviving spouse if a separation was procured by the veteran even if there was no misconduct by the veteran. And under a proper interpretation of the regulation, 38 C.F.R. § 3.53(b), a separation by mutual agreement, without an intent to desert, does not break the continuity of cohabitation. The Veterans Court misinterpreted both the statute and regulation in holding that "[s]ince the . . . separation

---

[6] Thus, we need not decide whether Board decisions applying an interpretation without discussing it or agency litigating positions are entitled to deference. See Auer v. Robbins, 519 U.S. 452, 462 (1997) (stating that "a 'post hoc rationalization' advanced by an agency seeking to defend past agency action against attack" was not entitled to deference but according deference to an agency's amicus brief); Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212-13 (1988) (holding in the Chevron context that "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate"); see also Cathedral Candle Co. v. Int'l Trade Comm'n, 400 F.3d 1352, 1364 (Fed. Cir. 2005) (suggesting that agency litigating positions are entitled to deference in some circumstances).

was by mutual consent without the fault of either party, [Alpough] cannot prevail because the law and the regulation make an exception only for a separation caused by the veteran's misconduct." Veterans Court Decision, slip op. at 4-5.

## CONCLUSION

Since the Veterans Court relied on erroneous interpretations of 38 U.S.C. § 101(3) and 38 C.F.R. § 3.53(b) when it rejected Louise's claim for DIC benefits, we vacate the Veterans Court's decision and remand for consideration under the proper interpretations.

## VACATED and REMANDED

## COSTS

No costs.