# United States Court of Appeals for the Federal Circuit

2007-7236

FORTUNATA CAPELLAN,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Fortunata Capellan, of Lopez, Quezon, Philippines, pro se.

Douglas K. Mickle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Jamie L. Mueller, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2007-7236

FORTUNATA CAPELLAN,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D.,
Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 05-1990, Chief Judge William P. Greene, Jr.

_____

DECIDED: September 2, 2008

_____

Before NEWMAN, MAYER, and SCHALL, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> NEWMAN. Concurring opinion filed by <u>Circuit Judge</u> SCHALL.

This appeal centers on the attempt of Fortunata Capellan to establish that her husband, Santiago A. Capellan, was killed in the Battle of Bataan in 1942 while in the Armed Forces of the Philippines in the service of the United States Armed Forces. His body was never recovered. Mrs. Capellan's claim is founded on 38 U.S.C. §107, which

provides certain veterans benefits to members of the Philippine military services who were incorporated into the United States Armed Forces. See 38 C.F.R. §3.40.

After the war Mrs. Capellan applied for veterans' benefits based on her husband's service. The application was granted and Mrs. Capellan received benefits for several months in 1950 until they were terminated in August of that year. This appeal is from the most recent denial of her claim for dependency and indemnity compensation, by decision of the United States Court of Appeals for Veterans Claims (the "Veterans Court"). The Veterans Court held that Mr. Capellan's military service had not been established by an official United States military document or verified by a United States service department pursuant to 38 C.F.R. §3.203, and declined to consider the new evidence from Philippine military authorities.[1] In its ruling the Veterans Court appears to have diverged from other decisions concerning verification of Philippine military service when new information was provided after an earlier adverse determination. See, e.g., Padilla v. Nicholson, No. 05-2518, 2007 WL 412356, at *2 (Vet. App. Jan. 3, 2007) (requiring review of new information); Dela Cruz v. Nicholson, No. 04-137, 2005 WL 3057877, at *3-*4 (Vet. App. Oct. 21, 2005) (requiring review of new information).

At the threshold, the government challenges our jurisdiction of this appeal.

## Jurisdiction

Pursuant to 38 U.S.C. §7292(a), as amended in 2002, this court has appellate authority "with respect to the validity of a decision of the [Veterans Court] on a rule of

---

[1] Capellan v. Nicholson, No. 05-1990, 2007 WL 561972 (Vet. App. Feb. 22, 2007).

2

law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." However, except to the extent that an appeal presents a constitutional issue, this court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. §7292(d)(2). The 2002 amendment to §7292(a) enlarged our jurisdiction beyond issues of the validity or interpretation of a statute or regulation, to include review of any legal principle and its interpretation. See Morgan v. Principi, 327 F.3d 1357, 1361 (Fed. Cir. 2003) ("[T]he amendment enacted by Congress has the effect of making the review of 'a decision of the Court [of Appeals for Veterans Claims] on a rule of law' a separate jurisdictional basis, and textually independent of whether that rule of law was 'relied on'. . . ."); see also Wilson v. Principi, 391 F.3d 1203, 1209 (Fed. Cir. 2004) ("We have interpreted the revised statute as conferring on this court a form of 'case jurisdiction,' as opposed to 'issue jurisdiction.'").

The Secretary of Veterans Affairs (herein "the VA") argues that this court does not have jurisdiction to consider any aspect of this appeal, stating that Mrs. Capellan is simply seeking review of a factual determination concerning Mr. Capellan's military service. Mrs. Capellan argues that the decision of the Veterans Court was based on an incorrect interpretation of certain statutes and regulations. The issues she raises primarily concern 38 C.F.R. §3.203, a VA regulation that relates to evidence of military service and that states the procedures to be followed by claimants and by the VA in collaboration with the military services. Mrs. Capellan argues that this regulation was incorrectly interpreted in view of the VA's statutory duty to assist, 38 U.S.C. §5103A, and the benefit-of-the-doubt statute applicable to veterans' claims, 38 U.S.C. §5107(b).

3

2007-7236

We conclude that the jurisdictional requirements of §7292 are met. <u>See</u> <u>Alpough v. Nicholson</u>, 490 F.3d 1352, 1358 (Fed. Cir. 2007) (accepting jurisdiction where the Veterans Court relied on erroneous interpretations of 38 U.S.C. §101(3) and 38 C.F.R. §3.53(b) in rejecting surviving spouse's claim for benefits); <u>Wilson</u>, 391 F.3d at 1211 (accepting jurisdiction and remanding for reapplication of EAJA in light of statutory change and intervening precedent). We thus accept jurisdiction, and remand for reapplication of the relevant statutory and regulatory provisions, consistent with this opinion.

## BACKGROUND

Before and during World War II the Commonwealth of the Philippines was a territory of the United States.[2] On July 26, 1941 President Roosevelt placed the military forces of the Philippines in the service of the United States Armed Forces in the Far East (USAFFE). <u>See</u> Military Order, 6 Fed. Reg. 3825 (July 26, 1941). The United States duly provided that members of the Philippine military forces who fought the Japanese invasion, or Philippine persons who fought as guerrillas during the Japanese occupation, and their survivors, were eligible for certain benefits from the United States. <u>See</u> 38 U.S.C. §107(a) (defining Philippine service qualifying for certain benefits, including dependency and indemnity compensation for a surviving spouse pursuant to chapter 13 of title 38); 38 C.F.R. §§3.40, 3.41 (specifying types of Philippine service qualifying for dependency and indemnity compensation benefits).

---

[2] Before the war, the Philippines had achieved a measure of self-governance pursuant to the Philippine Independence Act of 1934, Pub. L. No. 73-127, 48 Stat. 456. The Philippines became independent on July 4, 1946. <u>See</u> <u>generally</u> <u>Quiban v. Veterans Admin.</u>, 928 F.2d 1154, 1156-58 (D.C. Cir. 1991).

2007-7236

After the war Mrs. Capellan filed a claim for death pension and other benefits based on her husband's military service and his death at Bataan. A United States Army Report dated August 2, 1948 states that the Army confirmed that Santiago A. Capellan served in the military service of the United States through the Philippine Commonwealth Army, that his service began on December 23, 1941, and that he was killed in action on February 28, 1942 during the battle for Bataan. The Report states that Mr. Capellan was a private in "B" Company, 1st Battalion, 1st Infantry Regiment, and that three affidavits pertaining to his military service were attached. On August 17, 1950 the Army issued another Report, stating that Mr. Capellan "has no recognized guerrilla service nor was he a member of the Commonwealth Army in the service of the Armed Forces of the United States." The 1950 Report does not explain the change from the 1948 Report, although it refers to a separate "loyalty report" on Mr. Capellan's father which is not included in the record. Mrs. Capellan briefly received benefits from the VA but they were terminated in 1950.

The activity relevant to this appeal is focused on documentation from the Philippine military authorities that Mrs. Capellan received in 1997 with respect to her husband's service and death at Bataan. A document dated December 9, 1997, signed by Records Officer Romeo L. Soriben and Captain Narciso S. Erna, Assistant Adjutant General of the Armed Forces of the Philippines, certified that Private Santiago Capellan served in the "B Co 1st Bn 1st Regt," and described his service as:

Beleaguered status fr 19 Dec 41 to 28 Fed 42; Died at Bagac, Bataan Phils on 28 Fed 42; Termination of casualty status on 23 Oct 44 (RPD dtd 20 Nov 47)

Admin. Rec. at 15.  Mrs. Capellan also received a certification of the records of the Armed Forces of the Philippines dated December 3, 1997 and signed by Captain Narciso Erna, which recorded payments made in arrears for Mr. Capellan's service

> while a member of the Commonwealth Army of the Philippines in the service of the USAFFE/GRLA.

Admin. Rec. at 16.  These documents were submitted in January 1998 to the VA Regional Office in Manila.  In October 1999 the Regional Office wrote Mrs. Capellan that it was unable to locate the relevant claims files and requested additional information.  The Regional Office letter stated:

> So that proper adjudicative action may be taken on your claim, you must furnish the following:
> * VA Form 21-534.  Please fill out every blank which applies to you.
> * VA Form 21-4138.  Please explain why your benefits were terminated in July 1950.
> * Copies of Notices of Award and Disallowance to include all available previous VA correspondence.
> * A copy of the veteran's death certificate.
> * A copy of your marriage certificate.

Admin. Rec. at 24.  Mrs. Capellan responded in December 1999, providing both requested VA forms and stating that she had not received a death certificate because her husband's "body was unrecovered and no document was issued to us by proper authorities.  I hope that this military service record will serve as his death certificate."  She included a copy of her marriage certificate, and explained that her copies of the Notices of Awards and Disallowances were misplaced or lost and could not be provided.  She explained that Mr. Capellan's father had received a letter from the VA in July 1950 asking for Mr. Capellan's military service record but that "[w]e were not able to submit the document needed because of improper guidance," and referred to a February 1951

letter from the VA stating that her benefits were terminated "for the reason that my husband has no recognized guerilla service."

The Regional Office requested a search for Mr. Capellan's military records from the National Personnel Records Center (NPRC) in Missouri. The NPRC is part of the United States National Archives and Records Administration, and receives and stores records of various types concerning persons who served in the Armed Forces. The NPRC provided the Regional Office with the 1948 U.S. Army report, which stated that Mr. Capellan had served with the Philippine Commonwealth Army in the service of the United States Armed Forces from December 23, 1941 through February 28, 1942 when he was killed in action. The Regional Office then wrote the NPRC that it had "reason to believe that there may have been a subsequent (1950) re-certification that revoked the 1948 report." The NPRC then provided the 1950 Army Report, the NPRC stating that "the determination of that date (8/17/50) stands." The record provided on this appeal does not reflect that the VA provided the Philippine military records, or any of Mrs. Capellan's other evidence, to the NPRC for verification of service.

The Regional Office then denied Mrs. Capellan's claim, stating that under 38 C.F.R. §3.203 decisions concerning verification of military service are the responsibility of the NPRC and "are binding on the VA which has no authority to change or amend the findings." Although the Regional Office decision listed the evidence provided by Mrs. Capellan, including the newly provided 1997 documents from the Philippine military officials and other post-1950 materials, the record shows no evaluation of this evidence by the NPRC, the Regional Office, or any United States military authority. The Regional Office decision did not state that any of Mrs. Capellan's post-1950 evidence had been

provided to the NPRC or any other authority for review. The denial informed Mrs. Capellan of her right to appeal, which would commence by filing a Notice of Disagreement with the Regional Office.

Mrs. Capellan submitted a Notice of Disagreement, attaching some previously submitted documentation from various Philippine authorities, including a document dated March 5, 2002 from the Philippine Veterans Affairs Office stating that it certified that Santiago Capellan "is a veteran of World War II/Philippine Revolution who served with 1st Reg. Div. PA with the grade/rank Pvt," that his service was in the USAFFE, and that an Old Age Pension for his widow Fortunata Capellan based on his service was approved on June 20, 1991. Mrs. Capellan also refiled an October 25, 1955 affidavit of Major Jose M. Javier, the commanding officer of the "B" Company, 1st Battalion, 1st Infantry Regiment Division, which included the following:

> 5. That I know officially and personally the late veteran, SANTIAGO CAPELLAN, a reservist who reported to active duty in the Philippine Army and was inducted into the USAFFE on or about 18 December 1941, at Camp Murphy, by an American Officer, and was assigned to my unit ("B" Co, 1st Bn, 1st Reg Div) as filler when my unit suffered casualties after the fierce fighting against the enemy at Mauban, Quezon; that said veteran, Santiago Capellan, was inducted into the USAFFE as Private;
> 6. That the late Pvt. Santiago Capellan had rendered continuous service and had seen actions in Bataan where he was killed in action during the enemy bombing of our line of resistance at Bagac, Bataan, on or about 15 February 1942, and died instantly;

Admin. Rec. at 77.

Other evidence submitted in 2002 included a Philippine Veterans Affairs Office list of veterans including Mr. Capellan who were entitled to shares of the Philippine Veterans Bank, and a stock certificate from the Philippine Veterans Bank showing Mrs.

8

Capellan's status as the widow and heir of Santiago Capellan.  Also resubmitted was an affidavit, dated August 18, 1946, of both the mayor and the chief of police of the city of Lopez, where Mr. Capellan had lived, stating that they each personally knew

> Santiago Capellan, a Reservist Private who left this municipality of Lopez, province of Tayabas, for active Military Service on December 19, 1941, and from that time to the present time [August 18, 1946], said Reservist, Santiago Capellan had not returned to his family.

Admin. Rec. at 78.  Also resubmitted was the March 20, 1969 affidavit of two military comrades of Mr. Capellan, Vicente Pilarca and Inocencio Anacion, who stated that they served with Santiago Capellan in the Philippine Army at Bataan and saw him hit by enemy bullets and killed.  The affidavit states:

> That we both personally know one, SANTIAGO CAPELLAN, a boyhood friend and townmate whom we met in Bataan somewhere in Abucay, and who told us, he was in uniform, that he was inducted into the USAFFE at Lucena, Quezon (Tayabas) as private in "B" Co., 1st Inf. under Lt. Cuaresma;
>
> That in the main Japanese Offensive at Balanga, we met the said veteran and in the haste of retreat, we chanced to be together and that while together, he was hit by enemy bullets causing his death, his body having been unrecovered;
>
> That the late Private SANTIAGO CAPELLAN died in action on or about the month of February, the date we could not recall at present, in the year 1942;
>
> That we know the above facts because the said veteran was with us during the critical days of the battle at Bataan and we personally saw him hit and died of enemy bullets;

Admin. Rec. at 100.

The Regional Office held a hearing in Manila on September 10, 2002.  In addition to the documentary records, Mrs. Capellan and two family members testified that her husband was killed in action while serving in the USAFFE.  They provided a photograph of Mr. Capellan in military uniform, and a group photo with his battalion.  The Regional

9

Office then denied the claim, stating that the 1950 Army Report was dispositive and that the entirety of the evidence provided by Mrs. Capellan "cannot be accepted as proof of military service of your deceased husband in absence of substantiating evidence in the records of the Army." The Regional Office did not discuss any of the evidence, and sought no substantiation from the United States or Philippine military authorities.

Mrs. Capellan appealed to the Board of Veterans Appeals, which held that the duties to notify and to assist should be applied, and remanded "to obtain additional development and full compliance with the VA's due process requirements." On March 5, 2004 the VA Appeals Management Center wrote to Mrs. Capellan and asked her to "Please provide us with any evidence or information you may have pertaining to your appeal. Provide medical evidence (that you have not already submitted) that will show that the deceased had valid military service." The letter stated that the VA was responsible for retrieving "[r]elevant records from any Federal agency," and would make reasonable efforts to get "[r]elevant records not held by a Federal agency." Mrs. Capellan was instructed to "give us enough information about your records so that we can request them from the person or agency that has them." The letter also stated: "It's your responsibility to make sure that we receive all requested records that aren't in the possession of a Federal department or agency."

On April 24, 2004 Mrs. Capellan replied to the Appeals Management Center and referred to the evidence in her file, pointing to the affidavits from persons who knew Mr. Capellan and witnessed his military service and saw his death in action at Bataan. She stated that his body was never recovered, and that there was thus no medical evidence of his death. The Appeals Management Center then denied her claim, stating that "[t]he

10

"evidence clearly indicates that Santiago A. Capellan has no recognized guerrilla service, nor was he a member of the Commonwealth Army of the Philippines in the service of the Armed Forces of the United States." The decision did not discuss any of Mrs. Capellan's evidence, and it appears that the Center relied solely on the 1950 U.S. Army Report in reaching its conclusion, stating that "substantial evidence" to refute this conclusion had not been submitted. The Center did not say how or if the Center had assisted, although it stated that a March 2003 letter met the VA's duty to notify the claimant of her rights.

Mrs. Capellan appealed to the Board, and summarized the material she had submitted as follows:

> It is not only the Affidavits of Lucia V. Almacha and Natividad C. Escobido [relatives] that were submitted. But many other documents that substantiated my claim and considered as New and Material Evidences.
> Some of the material evidences are as follows:
> 1. Affidavit of Mr. Vicente Pilarca.
>    An eyewitness that my husband in Uniform as a USAFFE participated in the Battle of Bataan.
> 2. Inocencio Anacion
>    Comrades-in-arms and eyewitness that my husband in uniform of the USAFFE was killed in action in Bataan.
> 3. Masterlists of the Shareholders of Stock Certificate of the Philippine Veterans Bank, owned by the World War II Veterans.
> 4. Certification of Military Service from the Non-Current Branch Office Division, Gen. Headquarters, AFP, Camp Gen. Emilio Aguinaldo, Quezon City, Philippines.
> 5. Certification of Salaries and Allowances received during the World War II, as a Backpay from the Gen. Headquarters, Camp Gen. Emilio Aguinaldo, Quezon City, Philippines.
> 6. Certification from the Phil. Veterans Affairs Office of my husband's Military Service during World War II.
> 7. Affidavit of Mr. Jose M. Javier, during their Defense of Bataan, together with my husband.
> 8. Picture of my husband during their USAFFE training in Port Area, Manila, Philippines, in uniform. His picture is with a check.

Admin. Rec. at 159-160.

11

On March 25, 2005 the Board denied Mrs. Capellan's claim, stating that none of the evidence she submitted could be considered because none of it was a "document issued by a U.S. Service Department," quoting 38 C.F.R. §3.203. The Board cited Duro v. Derwinski, 2 Vet. App. 530 (1992), which held that the "VA is prohibited from finding, on any basis other than a service department document, which VA believes to be authentic and accurate, or service department verification, that a particular individual served in the U.S. Armed Forces." Id. at 532. She was informed of the right to appeal to the Veterans Court.

With her appeal to the Veterans Court, Mrs. Capellan again pointed to the evidence from the Philippine military authorities and others attesting to her husband's military service and to his death at Bataan. She stated that a thorough investigation by the Philippine Judge Advocate General's Office in 1947 had determined that Mr. Capellan had served and was killed in action, and provided the additional information that had been before the Board. She stated that it was known that Philippine military personnel were not fully recorded in the NPRC archives, citing specific examples, and that these records were especially deficient as to Philippine personnel killed in the war.

In the Veterans Court, the VA acknowledged Mrs. Capellan's evidence, including the certification of her husband's military status from the Philippine Armed Forces, but argued that there was a "plausible basis" for the Board's decision in light of the evidentiary requirements of 38 C.F.R. §3.203. The Veterans Court ruled that the VA is bound by the United States Army's 1950 report, and that none of the subsequent evidence could be considered because it was not issued by a United States military service department. The Veterans Court cited Duro, 2 Vet. App. at 532, and Soria v.

<u>Brown</u>, 118 F.3d 747, 749 (Fed. Cir. 1997), where the Federal Circuit observed that "Philippine veterans are not eligible for veterans' benefits unless a United States service department documents or certifies their service." Subsequent cases have recognized that the <u>Soria</u> decision preceded the enactment in 2000 of the statutory duty to assist. <u>See</u> <u>Palor v. Nicholson</u>, 21 Vet. App. 325, 330-31 (2007) (discussing effect of Veterans Claims Assistance Act on <u>Soria</u> decision).

DISCUSSION

The record does not show any request by any VA authority for service department review of any of the documents provided by Mrs. Capellan as she proceeded, over the years, in the Regional Office and the Board of Veterans Appeals and the Veterans Court — although 38 C.F.R. §3.203(c) states that the VA "shall request verification of service from the service department":

> **38 C.F.R. §3.203** Service records as evidence of service and character of discharge.
>     (a) Evidence submitted by a claimant. For the purpose of establishing entitlement to pension, compensation, dependency and indemnity compensation or burial benefits the Department of Veterans Affairs may accept evidence of service submitted by the claimant (or sent directly to the Department of Veterans Affairs by the service department), such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions:
>         (1) The evidence is a document issued by the service department. . . .
>             . . . .
>     (c) Verification from the service department. When the claimant does not submit evidence of service or the evidence submitted does not meet the requirements of paragraph (a) of this section (and paragraph (b) of this section in pension claims), the Department of Veterans Affairs shall request verification of service from the service department. . . .

Section 3.203 is a general evidentiary rule; it contains no special provisions concerning Philippine military service as recognized under 38 U.S.C. §107(a). Thus section

13

3.203(c) requires verification of service from the service department whenever a claimant lacks the kind of official evidence specified in section 3.203(a). The reports of all of the tribunals in the records provided to us show that they treated the 1950 Army Report as dispositive because it was the last review by the Army. While this 1950 Army Report was located by the NPRC in response to a specific VA search request in 2001, after the first VA search request had turned up only the 1948 Army Report, the record does not show that the VA ever provided any of Mrs. Capellan's post-1950 evidence to the Army or to the NPRC. Mrs. Capellan argues that this rejection of her claim without review of all the evidence did not comport with the VA's duty to assist her, and the obligation to afford her claim the benefit of the doubt based on all the evidence. The provision by the NPRC of the Reports in its archives does not constitute review of all the evidence related to military service.

The "duty to assist," 38 U.S.C. §5103A; 38 C.F.R. §3.159, although mentioned by the VA, does not appear to have been invoked to provide agency assistance in procuring the requisite "verification of service from the service department." Similarly, the "benefit of the doubt" statute, 38 U.S.C. §5107(b), was ruled inapplicable by the Veterans Court because the court stated that the evidence was not in equipoise. The Veterans Court, like the Board, interpreted 38 C.F.R. §3.203(c) to negate consideration of the post-1950 evidence submitted by the claimant. This interpretation of section 3.203(c), relied on by the Veterans Court and the VA, is incorrect in light of the legal requirements of assistance to claimants.

The "duty to assist" statute and regulations apply to all evidence needed to substantiate a claim. The VA's obligation includes assisting the claimant in developing

2007-7236

her claim by making "as many requests as are necessary to obtain relevant records from a Federal department or agency." 38 C.F.R. §3.159(c)(2). In this case, it is not explained how this duty was met, for, according to the record, service department consideration was not requested for any evidence that Mrs. Capellan provided after 1950. The Veterans Court has interpreted section 3.203(c) consonant with the current duty to assist, stating that "when a claimant submits evidence establishing that the service department's certification was based upon erroneous information, a second certification may be required." Laruan v. West, 11 Vet. App. 80, 82 (1998) (*en banc*), overruled on other grounds by D'Amico v. West, 209 F.3d 1322, 1327 (Fed. Cir. 2000). Similarly, in Padilla v. Nicholson, No. 05-2518, 2007 WL 412356, at *2 (Vet. App. Jan. 3, 2007) the Veterans Court held that the Board erred in relying on an earlier NPRC record rather than submitting the new evidence concerning the claimed military service. The court stated: "When new identifying information is provided by the appellant, the Secretary 'shall request verification of service from the service department.'" Id. (quoting 38 C.F.R. §3.203(c)). See also Dela Cruz v. Nicholson, No. 04-137, 2005 WL 3057877, at *3 (Vet. App. Oct. 21, 2005) (applying duty to assist where it was unclear whether the proper form had been used to obtain an affidavit from the Philippine Army in connection with a request for verification of service). In Sarmiento v. Brown, 7 Vet. App. 80 (1994), overruled on other grounds by D'Amico, 209 F.3d at 1227, the Veterans Court stated that "there is no stated limit on the number of times that the Secretary 'shall' request service department verification when one claiming entitlement fails to submit qualifying evidence of service." Id. at 85. We conclude that the correct interpretation of the governing statutes and regulations requires that a claimant's new evidence be

15

submitted and considered in connection with a request for "verification of service from the service department" pursuant to 38 C.F.R. §3.203(c).

The "benefit of the doubt" statute, 38 U.S.C. §5107(b), and the analogous "reasonable doubt" regulation, 38 C.F.R. §3.102, apply to all material issues relating to a claim, including verification of military service. See Kelly v. Nicholson, 463 F.3d 1349, 1354 (Fed. Cir. 2006) (stating that 38 U.S.C. §5107(b) "applies not only to decisions relating to the overall merits of a claim, but by its plain language it applies to all decisions determining any material issue relating to a claim"). The VA argues that these provisions are outside our appellate jurisdiction because they relate to the weighing of evidence, which is excluded from our review by 38 U.S.C. §7292(d)(2). We agree that the weighing of evidence is not within our appellate authority. However, when statute and regulation require that the veterans' tribunals weigh the evidence, our authority includes assuring that the evidence is weighed under the appropriate statutes and regulations. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006) (Federal Circuit has jurisdiction to review interpretation of the benefit of the doubt rule and other legal provisions). Both the statute and the regulation explicitly require the consideration of all evidence submitted by the claimant. See 38 U.S.C. §5107(b) ("The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary."); 38 C.F.R. §3.102 ("When, after careful consideration of all procurable and assembled data, a reasonable doubt exists regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant."). The reasonable doubt regulation by its terms applies "even in the absence of official records,

16

particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships." 38 C.F.R. §3.102. In accordance with 38 C.F.R. §3.203(c), the agency is required to ensure consideration of "all procurable and assembled data," including lay evidence, in connection with a request for "verification of service from the service department."

38 C.F.R. §3.203 requires that Mr. Capellan's military service be determined based on all relevant evidence, with due application of the duty to assist, 38 U.S.C. §5103A; 38 C.F.R. §3.159, and the statutory and regulatory requirements to consider "all information and lay . . . evidence of record," 38 U.S.C. §5107(b); see also 38 C.F.R. §3.102. The VA erred in denying Mrs. Capellan's claim based on the archival 1950 Army Report, while obtaining no review of the subsequent evidence by the service department. We vacate the decision of the Veterans Court, and remand for determination, on the entirety of the evidence, of Mr. Capellan's military service.

<u>VACATED AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

2007-7236

FORTUNATA CAPELLAN,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D.,
Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 05-1990, Chief Judge William P. Greene, Jr.

SCHALL, <u>Circuit Judge</u>, concurring.

The court holds that the Department of Veterans Affairs ("VA") failed to comply with the duty to assist because it did not furnish the Department of the Army with the material provided by Mrs. Capellan in support of her claim and did not request from the service department, pursuant to 38 C.F.R. § 3.203(c), verification of the military service of her husband, Santiago Capellan. Based upon its holding, the court remands the case to the Court of Appeals for Veterans Claims ("Veterans Court") for further proceedings. In that regard, the final paragraph of the opinion reads as follows:

> 38 C.F.R. §3.203 requires that Mr. Capellan's military service be determined based on all relevant evidence, with due application of the duty to assist, 38 U.S.C. §5103A; 38 C.F.R. §3.159, and the statutory and regulatory requirements to consider "all information and lay . . . evidence of record," 38 U.S.C. §5107(b); <u>see</u> <u>also</u> 38 C.F.R. 3.102. The VA erred in denying Mrs. Capellan's claim based on the archival 1950 Army Report, while obtaining no review of the subsequent evidence by the service department. We vacate the decision of the Veterans Court, and remand for determination, on the entirety of the evidence, of Mr. Capellan's military service.

I agree that the VA failed to comply with the duty to assist. I also agree that a remand is necessary. I write separately, however, to express my view that the only appropriate remand in this case is a remand in which the Veterans Court directs the VA to request verification, pursuant to 38 C.F.R. § 3.203(c), of Santiago Capellan's military service and in which the Veterans Court directs the VA to provide the service department with all the material submitted by Mrs. Capellan in support of her claim. Any other remand activity by the Veterans Court beyond this would, in my view, be contrary to this court's decision in <u>Soria v. Brown</u>, 118 F.3d 747 (Fed. Cir. 1997). After the service department acts on the request for verification, the VA will be in a position to rule on Mrs. Capellan's claim.