Citation Nr: 1522710 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 12-18 672 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUE

Entitlement to service connection for prostate cancer, claimed as due to herbicide exposure.


REPRESENTATION

Veteran represented by: Illinois Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J.N. Moats, Counsel

INTRODUCTION

The Veteran had active service from July 1966 to April 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois. 

In March 2015, the Veteran testified at a video-conference Board hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record. At such time and later in March 2015, the Veteran submitted additional evidence with a waiver of RO consideration of such evidence. 38 C.F.R. § 20.1304(c) (2014). Thus, the Board may properly consider such newly received evidence. 

As a final preliminary matter, the Board observes that in additional to paper claims file, the Veteran also has electronic, paperless Virtual VA and Veterans Benefit Management System (VBMS) records associated with his claim. The Veteran's VBMS record contains the Board hearing transcript as well as the additional evidence submitted by the Veteran. The records in Virtual VA are duplicative of the evidence in the claims file. 


FINDINGS OF FACT

1. Resolving all doubt in his favor, the Veteran was present in or near the Korean demilitarized zone (DMZ) while on active duty in April 1968, as a result of delivering mail and supplies as part of his duties as a mail carrier, where he was exposed to herbicides.

2. The Veteran has been diagnosed with prostate cancer, which is present to a compensable degree, and is presumed to be due to exposure to herbicides. 



CONCLUSION OF LAW

The criteria for service connection prostate cancer have been met. 38 U.S.C.A. §§ 1110, 1116, 5107(b) (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309(e) (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As the Board's decision to grant service connection for prostate cancer herein constitutes a complete grant of the benefit sought on appeal, no further action is required to comply with the Veterans Claims Assistance Act of 2000 and the implementing regulations. 

The Veteran is seeking service connection for prostate cancer. Essentially, he asserts that his prostate cancer is due to exposure to herbicides while on active duty in Korea. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

The VA Adjudication Procedures Manual observes that the Department of Defense (DoD) had confirmed that the herbicide, Agent Orange, was used from April 1968 through July 1969 along the Korean DMZ to defoliate the fields of fire between the front line defensive positions and the south barrier fence. The treated area was a strip of land 151 miles long and up to 350 yards wide from the fence to north of the civilian control line. There was no indication that the herbicide was sprayed in the DMZ itself. 

Under the development instructions set out in the VA Adjudication Procedure Manual, if it is determined that a Veteran who served in Korea during that time period belonged to one of the units identified by DoD, then it was presumed that he or she was exposed to herbicides containing Agent Orange, and the presumptions outlined in 38 C.F.R. § 3.309(e) would apply. See VA Adjudication Procedure Manual, MR21-1MR, Part IV, Subpart ii, Chapter 2, Section C. If the Veteran served in a different unit located in Korea during this time period, the Veteran's unit's location must be verified. Id. 

During the course of the appeal, effective February 24, 2011, 38 C.F.R. § 3.307(a)(6)(iv) was added, pertaining to service connection claims based upon exposure to herbicides while serving in Korea. Under the new regulation, a Veteran who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the DoD, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iv).

The term "Veteran with covered service in Korea" means a person who served in the active military, naval, or air service in or near the Korean DMZ between September 1, 1967, and August 31, 1971, and who is determined by VA, in consultation with the DoD, to have been exposed to an herbicide agent during such service. Exposure to an herbicide agent will be conceded if the Veteran served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the DoD, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.814(c)(2).


If a Veteran was exposed to an herbicide agent during active military, naval, or air service, prostate cancer, shall be service-connected even though there is no record of such disease during service. 38 C.F.R. § 3.309(e). The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and acute and subacute peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the Veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii).

Notwithstanding the foregoing presumption, a claimant is not precluded from establishing service connection with proof of direct causation. 38 U.S.C.A. 
§ 1113(b); Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In pertinent part, the Veteran's form DD 214 and his personnel records reflect that his military occupational specialty was wireman with the 51st Signal Battalion, and he was stationed in Korea until April 8, 1968. Thus, he was present in Korea during the applicable time period that herbicides were used in accordance with the new 38 C.F.R. 38 C.F.R. § 3.307(a)(6)(iv). Nevertheless, a July 2010 response from the U.S. Joint Services Records Research Center (JSRRC) stated that the unit history of 51st Signal Battalion had been reviewed and showed that the Battalion was stationed in Camp Pililaau, Uijongbu, Korea, which was approximately twenty one miles from the DMZ. The history did not document any specific duties performed by unit members along the DMZ. It concluded that no United States personnel were known to have been actually involved in the application of herbicides.

Thus, the record does not document that the Veteran served in a unit that operated in or near the Korean DMZ. Military service is, however, to be determined based on all relevant evidence, with due application of the duty to assist, and the statutory and regulatory requirements to consider "all information and lay ... evidence of record." 38 U.S.C. § 5107(b); see also 38 C.F.R. § 3.102. Capellan v. Peake, 539 F.3d 1373, 1382 (Fed. Cir. 2008) (discussing 38 C.F.R. § 3.203 (2014)). 

The Veteran has contended in several statements, as well as in Board hearing testimony, that he had been exposed to herbicides while on active duty in Korea. Specifically, he indicated that, although his unit was stationed at Camp Pililaau, which was not located in the DMZ, as part of his duties as a mail carrier, he delivered mail and other supplies to units stationed along the DMZ at least twice a week. 

In support of his claim, he also submitted lay statements from two fellow service members while stationed in Korea. The statements both corroborated the Veteran's assertion that he made trips to sites along the DMZ to deliver mail. He also provided an organizational chart that he asserts shows his battalion, the 51st Signal Battalion, was also under the I Corps and provided support to the 2nd US infantry and 7th US Infantry that were stationed along the DMZ. He also has submitted various photos and maps to support his claim.

In relevant part, 38 U.S.C.A. § 1154(a) requires that VA give "due consideration" to all pertinent medical and lay evidence in evaluating a claim for disability benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ('[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence').

In the instant case, the Veteran is competent to report that his duties took him to, or near, the DMZ, and his reports are consistent with the circumstances of his service as a mail carrier in Korea. He has been consistent in his statements and there is no explicit evidence to contradict his reports. Rather, statements received from other service members, as well as the additional evidence submitted by the Veteran, tend to corroborate his contentions. Thus, resolving reasonable doubt in his favor, the Board finds that the Veteran served in locations in Korea that would have entailed exposure to herbicides.

Private treatment records showed that the Veteran has been diagnosed with prostate cancer for which he underwent a radical retropubic prostatectomy. Thus, his prostate cancer has manifested to a compensable degree. See 38 C.F.R. § 4.116, Diagnostic Code 7528 (providing a 100 percent rating following the cessation of surgery until at least the expiration of six months).

As the Veteran was present in Korea during the relevant timeframe and under the relevant circumstances, he is presumed to have been exposed to herbicides, including Agent Orange. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307. In addition, he has been shown to have prostate cancer, to a compensable degree, and VA has found that there is a link between herbicide exposure and prostate cancer. As such, service connection for prostate cancer, is granted. 38 U.S.C.A. §§ 1110, 1116; 38 C.F.R. §§ 3.303, 3.307, 3.309(e).


ORDER

Service connection for prostate cancer is granted.



____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs