# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-3575

JULIET T. TAGUPA, APPELLANT,

v.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 2, 2014)                                  Decided August 26, 2014)

*David E. Boelzner*, of Richmond, Virginia, for the appellant.

*Brandon A. Jonas*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Nisha C. Hall*, Deputy Assistant General Counsel; and *Michele Russell Katina*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN and DAVIS, *Judges*.

DAVIS, *Judge*, filed the opinion of the Court. KASOLD, *Chief Judge*, filed an opinion concurring in part and dissenting in part.

DAVIS, *Judge*: Juliet T. Tagupa, surviving spouse of Luis T. Tagupa, appeals through counsel from an August 2, 2011, Board of Veterans' Appeals (Board) decision that denied her VA benefits because her husband did not have qualifying military service to establish status as a veteran of the U.S. Armed Forces. The Court previously affirmed the Board's decision denying benefits in a May 31, 2013, single-judge decision. *Tagupa v. Shinseki*, No. 11-3575, 2013 U.S. Vet. App. LEXIS 863 (May 31, 2013) (mem. dec.). However, the Court granted Mrs. Tagupa's motion for reconsideration and submitted the appeal to a panel of the Court to determine whether the National Personnel Records Center (NPRC) constitutes a service department for purposes of verifying service under 38 C.F.R. § 3.203(c) (2014). *Tagupa v. Shinseki*, No. 11-3575, 2013 U.S. Vet. App. 1223 (July 25, 2013) (order).

For the following reasons, the Court will deny Mrs. Tagupa's motion for leave to submit supplemental evidence, and will withdraw its May 31, 2013, decision and issue this panel decision in its stead. The Court holds that it cannot determine, on the record as submitted, whether the Department of the Army has delegated the authority to make service decisions to the National Archives and Records Administration (NARA), or its agency, the NPRC, for purposes of verifying service under § 3.203(c). Therefore, absent evidence of a statutorily delegated duty, the plain meaning of VA's regulation requires verification of service from the relevant service department. Accordingly, the Court will set aside the August 2011 Board decision and remand the matter for VA to seek verification of Mr. Tagupa's service from the Department of the Army.

## I. BACKGROUND

Mr. Tagupa died in 1993. In December 2008, Mrs. Tagupa filed an application for VA benefits based on her late husband's World War II military service. Because Mr. Tagupa's name was not on the "Reconstructed Recognized Guerrilla Roster," the Manilla, Philippines, regional office (RO) requested verification of his service from the NPRC,[1] using the service number 47020. Record (R.) at 159. NPRC's May 2009 stamped response noted that Mr. Tagupa "has no service as a member of the Philippines Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces." *Id.* The record reflects that on June 9, 2009, the RO submitted a second request to NPRC for service verification of Mr. Tagupa's service and on June 19, 2009, the RO denied Mrs. Tagupa's claim for benefits. R. at 113, 159. NPRC's August 2009 response to the second verification request contained a negative stamped response identical to the first response. R. at 155.

In her Notice of Disagreement (NOD) to the June 2009 RO decision, Mrs. Tagupa submitted evidence of her husband's service, including an identification card from the "Anderson Fil-American Guerrillas," issued to Luis Tabac Tagupa, with the number "1 47020" on the front of the card. R. at 114. This card states that Mr. Tagupa actively participated in the anti-Japanese resistance movement in the Philippines from March 4, 1942, until September 27, 1945, when he was honorably

---

[1] NPRC is a part of NARA, "and receives and stores records of various types concerning persons who served in the Armed Forces." *Capellan v. Peake*, 539 F.3d 1373, 1376 (Fed. Cir. 2008).

discharged. R. at 115. In addition to this document, Mrs. Tagupa submitted affidavits from two of her husband's comrades, who attested to his service, and a certificate recognizing and thanking Mr. Tagupa for his service "in the Armed Forces of the United States," which bears the signature of President Barack Obama. R. at 87.

VA continued to deny Mrs. Tagupa benefits in a February 2010 Statement of the Case (SOC) and a March 2010 Supplemental SOC because her husband had no qualifying military service. After filing an appeal to the Board, Mrs. Tagupa informed the RO that its requests for verification from NPRC used the number "47020" rather than "147020." R. at 50. On October 13, 2010, the RO submitted a third request for service verification to NPRC using number "147020," and also included the Anderson Fil-American Guerrillas identification card and the affidavits from Mr. Tagupa's comrades attesting to his service. On October 20, 2010, Mrs. Tagupa sought information from NARA about her late husband's military service by completing a form and noting that her husband separated from service in September 1945 at "Army Forces 48 LGF, Luzon Guerilla." R. at 42. VA received a copy of Mrs. Tagupa's completed NARA form on November 22, 2010–10 days after NPRC responded to VA's third verification request – by indicating the submitted information did not warrant a change in its prior negative verification. R. at 48.

## II. ARGUMENTS OF THE PARTIES

Mrs. Tagupa argues that VA failed to comply with 38 C.F.R. § 3.203(c), when it sought verification of Mr. Tagupa's service as a guerrilla working with the U.S. Armed Forces in the Philippines from the NPRC rather than the service department. She asserts that the NPRC does not have the relevant Philippine records. She argued in her brief that it is possible the relevant records were destroyed in the 1973 fire at NPRC's facility in St. Louis; however, at oral argument she conceded that the fire of 1973 did not destroy Philippine records.

In response, the Secretary asserts that NPRC operates as an agent of the Department of the Army, maintains the relevant Philippine records, and has the authority to make service department determinations. As support for NPRC's authority to make service department determinations, the Secretary submitted a 1998 memorandum of agreement (MOA) between the Department of the Army and NARA, a document not before the Board in August 2011. In this agreement, the Department

3

of the Army purported to transfer "responsibility for providing reference services on the collection of Philippine Army files and archives holdings" to NARA indefinitely. *See* Secretary's (Sec.) Response (Resp.) to Court's July 2013 Order, Exhibit A.

In response to the MOA, Mrs. Tagupa filed a motion for leave to submit supplemental evidence should the Court take judicial notice of the MOA. The supplemental information Mrs. Tagupa sought to admit was a July 9, 2013, White House blog posting entitled "Recognizing the Extraordinary Contribution of Filipino Veterans." This blog article discussed the work of the Filipino Veterans Equity Compensation Fund Interagency Working Group–comprising VA, the Department of Defense, and NARA–and contained statements on the duties of the NPRC. Specifically, the blog stated that the NPRC does not make service determinations. *See* Appellant's Motion for Leave to Submit Supplemental Evidence at 6.

Mrs. Tagupa also contends that the Board should have found veteran status under 38 C.F.R. § 3.203(a), because the Anderson Fil-American Guerrillas identification card identifies her husband by name and states on its face that his military group is recognized by the "U.S.A. government." R. 114. She furthermore asserts that the Board violated *Capellan*, *supra* note 1, by failing to submit another request to NPRC after she provided her husband's place of separation from service. She also contends that the Board erred in relying on negative responses from the NPRC because these responses did not address whether Mr. Tagupa's guerrilla service could have been with unrecognized guerrillas.

### III. ANALYSIS

"Generally, '[i]n order to qualify for VA benefits, a claimant . . . or the party upon whose service the claimant predicates the claim . . . [must be] a "veteran."'" *Donnellan v. Shinseki*, 24 Vet.App. 167, 170-71 (2010) (quoting *Cropper v. Brown*, 6 Vet.App. 450, 452 (1994)). A "veteran" is "a person who served in the active military, naval, or air service," and was discharged under conditions other than dishonorable. 38 U.S.C. § 101(2); 38 C.F.R. § 3.1(d) (2014). In July 1941, President Roosevelt placed the military forces of the Philippines in the service of the U.S. Armed Forces of the Far East, and members of the Philippine forces who fought against the Japanese or who fought as guerrillas during the Japanese occupation may be eligible for certain veteran's

4

benefits from the United States. *See Capellan*, 539 F.3d at 1375; *see also* 38 U.S.C. § 107 (detailing the Philippine service veterans and the types of benefits to which such veterans are entitled); 38 C.F.R. §§ 3.40 (allowing dependency and compensation and burial benefits for Philippine guerrilla service), 3.203 (detailing the general evidentiary requirements for proving veteran status) (2014).

## A.  Plain Language of the Regulation

The "interpretation of a statute or regulation is a question of law," *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003), and our review is performed de novo, *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004).  To discern the meaning of a regulation, the Court begins with the plain language of the regulation.  *Cf. Perrin v. United States*, 444 U.S. 37, 42 (1979) ("We begin with the language of the . . . Act itself."); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory interpretation apply to interpreting regulations), *superseded by statute as stated in Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005).  "If the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)).

At issue is the language of 38 C.F.R. § 3.203, the evidentiary regulation for proving service, which provides in pertinent part:

> (a) Evidence submitted by a claimant.  For the purpose of establishing entitlement to . . . dependency and indemnity compensation or burial benefits the Department of Veterans Affairs may accept evidence of service submitted by a claimant (or sent directly to the Department of Veterans Affairs by the service department), such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions:
>
> (1) The evidence is a document issued by the service department. A copy of an original document is acceptable if the copy was issued by the service department or if the copy was issued by a public custodian of records who certifies that it is a true and exact copy of the document in the custodian's custody or, if the copy was submitted by an accredited agent, attorney or service organization representative who has successfully completed VA-prescribed training on military records, and who certifies that it is a true and exact copy of either an original document or of a copy issued by the service department or a public custodian of records; and
> (2) The document contains needed information as to length, time and character of service; and

(3) In the opinion of the Department of Veterans Affairs the document is genuine and the information contained in it is accurate.

****

(c) Verification from the service department. When the claimant does not submit evidence of service or the evidence submitted does not meet the requirements of paragraph (a) of this section (and paragraph (b) of this section in pension claims), the Department of Veterans Affairs shall request verification of service from the service department.

38 C.F.R. § 3.203.

Subsection (a) of the regulation uses the term "may" and thus gives VA discretion to determine whether the evidence submitted to establish service is itself sufficient, without additional service department verification. *See Willis v. Brown*, 6 Vet.App. 433, 435 (1994) (using the word "may" in a statute makes action discretionary); *see also Stewart v. Brown*, 10 Vet.App. 15, 18 (1997) (noting that an action is committed to the discretion of the Secretary where regulation uses word "may"). However, VA has imposed three specific conditions on its use of this discretion: (1) The document in question is issued by a service department; (2) the document contains specified information; and (3) in VA's opinion, the document is genuine. Thus, rigid requirements restrict VA's discretion. In subsection (c), the word "shall" requires that VA request service verification *from the service department* when either a claimant submits no evidence of service or VA determines that the evidence submitted does not satisfy the requirements of subsection (a). *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall[]' . . . normally creates an obligation impervious to . . . discretion." (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947))). Interpreting this language, the Court has held that the regulation prohibits VA from finding that a person served in the U.S. Armed Forces based on anything other than a document issued by a service department or verification by a service department. *Duro v. Derwinski*, 2 Vet.App. 530, 532 (1992). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) recognized that "VA has long treated the service department's decision on [verification] as conclusive and binding." *Soria v. Brown*, 118 F.3d 747, 749 (Fed. Cir. 1997). Accordingly, the plain language of the regulation and caselaw have determined that the entity in the best position to verify service is the appropriate service department and VA's acceptance of any service department

6

document, without further verification by the service, is limited and discretionary under § 3.203(a).

Although each service department is charged with making binding service department determinations, Congress permits some Government officials to authorize the "Archivist to certify to facts and to make administrative determinations on the basis of records transferred to the Archivist, notwithstanding any other law." 44 U.S.C. § 3104; *see also* 44 U.S.C. § 4102 (establishing NARA and placing it under the supervision of "the Archivist"). After the promulgation of § 3.203 and *Duro* and *Soria*, the Department of the Army executed the 1998 MOA with NARA that assigned the responsibility of "providing reference service on the collection of Philippine Army files and archival holdings." Sec. Resp. to Court's July 2013 Order, Exhibit A, at 1. As previously stated, the Secretary submitted this MOA directly to the Court as proof that the Department of the Army has delegated its authority to make service department determinations to NARA. Because the MOA was not in evidence in the proceedings before VA, the Court must first determine whether it may take judicial notice of the document.

Generally, the Court is precluded from considering evidentiary material that is not contained in the record on appeal, *see Kyhn v. Shinseki*, 719 F.3d 572 (Fed. Cir. 2013); however, the Court may take judicial notice of facts not subject to reasonable dispute if such facts are generally known or are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008) (noting that, while the Federal Rules of Evidence are not binding on the Court or on the Board, "the rules on expert witness testimony provide useful guidance"); *see also AZ v. Shinseki*, 731 F.3d 1303, 1316 (Fed. Cir. 2013) (agreeing with this Court that the Federal Rules of Evidence "offer useful guidance").

The Court will take judicial notice of the existence of the MOA between the Department of the Army and NARA. *See* FED. R. EVID. 201(b); *see also United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) ("An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court."); *Mills v. Denver Tramway Corp.*, 155 F.2d 808, 812 (1946) ("Whether an appellate court will for the first time take judicial notice of a judicially notable fact rests largely in its own discretion."). Based on the provisions in the MOA, however, it is unclear whether the MOA assigns to NARA the authority to make administrative determinations verifying

service or assigns to NARA the duties to act simply as a reference librarian. For example, the MOA's paragraph 6(a) describes NARA's mission as (1) processing inquiries from VA involving benefits due to Philippine Army or Guerrilla personnel, (2) responding to requests from Filipinos or their next of kin concerning service in the Philippine Commonwealth Army and recognized guerrillas, (3) searching the Philippine Army files and archives, (4) furnishing personnel folders from among other things, guerrilla rosters, and (5) preparing final replies to Freedom of Information Act cases. *See* Sec. Resp., Exhibit A, at 2-3. In paragraph 8(a)(2), however, the MOA expressly states that the Department of the Army retains the responsibility "to respond to requests involving decisions or determinations that can only be made by the legal custodian of the records (e.g., Freedom of Information Act denials, litigation)." *Id*. at 4.

The ambiguous language of the MOA precludes the Court from finding that the Department of the Army delegated its duty to make administrative determinations verifying service to NARA, or its agency, NPRC. Absent evidence of delegation to NPRC of the service department's authority to determine qualifying service, the plain mandatory language of VA's regulation controls. That language clearly states that, when VA has determined that evidence of service does not comply with subsection (a), VA "shall request verification of service *from the service department*." 38 C.F.R. § 3.203(c) (emphasis added); *See Tropf*, 20 Vet.App. at 320 (concluding that if the meaning of regulation is clear, that ends the matter). Because this language is clear, the Court will remand the case to VA to seek verification of Mr. Tagupa's service with the Department of the Army.

The Court declines to take judicial notice of Government websites referenced by the parties, or of the White House blog referenced by Mrs. Tagupa that stated that the NPRC does not make service determinations. This information was not before the Board and contains potentially conflicting information as to whether NPRC can act as an agent of the service department for the purpose of making service determinations, and raises questions concerning the records in the Philippine archives housed at NPRC. *See* FED. R. EVID. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute).

### B. Duty To Assist

In addition to VA's duty to seek verification from the service department under § 3.203, VA also has a duty to assist a claimant in obtaining evidence necessary to substantiate a claim, including

establishing veteran status. 38 U.S.C. § 5103A(a)(1); *Canlas v. Nicholson*, 21 Vet.App. 312, 316 (2007). This duty includes making reasonable efforts to obtain all records held by a governmental entity that are relevant to the claim and that pertain to the claimant's military service if the claimant provides the Secretary information sufficient to locate such records. 38 C.F.R. § 3.159(c)(2) (2014). To that end, VA is required to make as many requests as necessary to obtain records from Federal agencies. VA may discontinue its efforts to obtain records from a Federal department or agency only when it concludes that continued efforts would be futile, which requires that the Federal department or agency advise VA that either the requested documents do not exist or that the custodian does not have them. *Id.* In determining that continued efforts would be futile, the Secretary must notify the veteran of the records VA was unable to obtain, explain the efforts VA made to obtain those records, and describe any further action VA will take with respect to the claim. *See* 38 U.S.C. § 5103A(b)(2).

Consistent with VA's duty to assist, the Federal Circuit has held that to establish service the service department must *review* and *consider the documentary evidence submitted*. *Capellan*, 539 F.3d at 1382-83. The Federal Circuit also declared that "[t]he provision by the NPRC of the Reports in its archives *does not constitute review of all the evidence* related to military service." *Id*. at 1380 (emphasis added). Here, VA forwarded information to NPRC along with its service verification requests, but after receiving NPRC's negative responses did nothing more to verify Mr. Tagupa's service. According to VA's adjudication manual, when the standard means of service verification prove unsuccessful, VA instructs ROs to attempt to seek alternative means of verifying service by establishing service from, among other sources, the Social Security Administration, State historical commissions, Federal or State offices of personnel management, current or former employers, U.S. Railroad Retirement Board, county courthouses, and rosters or registers published by States that list veterans who served in World War I, World War II, and the Korean Conflict. VA ADJUDICATION PROCEDURES MANUAL, pt. III, subpt. iii, ch. 2, sec. E.30.b.

In *Canlas*, the Court expressly left open the question whether VA's duty to assist requires VA to obtain records where the NPRC had already provided a negative service verification. 21 Vet.App. at 317-18. From its prior decisions as well as decisions from the Federal Circuit, the Court recognizes that "NPRC" and "the service department" are used interchangeably; however, in these decisions the question whether NPRC may under § 3.203(c) be a substitute for the service

department was not an issue before the Court. *See e.g.*, *Capellan*, *supra* note 1; *Palor v. Nicholson*, 21 Vet.App. 325 (2007); *Canlas*, *supra*. Because the Court is remanding the matter for VA to seek verification of Mr. Tagupa's service from the Department of the Army, it is premature to determine whether the duty to assist requires VA to conduct additional development if the Department of the Army provides a negative verification response.

### C. Reasons or Bases for Rejecting Evidence of Service

In attempting to prove her husband's service with the U.S. Armed Forces during World War II, Mrs. Tagupa submitted an Anderson Fil-American Guerrillas identification card bearing the number "14720" and containing the notation that this group was "[r]ecognized by the "U.S.A. Government." R. at 114. The identification card lists Mr. Luis T. Tagupa's rank as sergeant with the 11th Sampta Regiment, Division I, and certifies that he actively participated in the anti-Japanese resistance movement in the Philippines, enlisting in March 4, 1942 and receiving an honorable discharge on September 27, 1945. R. at 84. Mrs. Tagupa also submits an affidavit from Angel Fagel, who states that he served with her husband when they actively participated in the anti-Japanese resistance movement, and an affidavit from Rodolfo de leon Soriano, who attests that Mr. Tagupa worked as a "U.S. Air Force Observer," in the "125 H Regimen 45h Battalion, 6th Division." R. at 116, 154. Finally, Mrs. Tagupa submits as evidence of her husband's service an undated certificate honoring and recognizing the service of Luis Tabag Tagupa in the Armed Forces of the United States, purportedly signed by President Barack Obama. R. at 87.

Although the documents offered as evidence of Mr. Tagupa's service do not qualify as a DD Form 214, a Certificate of Release or Discharge from Active Duty, or an original Certificate of Discharge, as set forth in subsection (a) of the regulation, Mrs. Tagupa argues that the identification card constitutes a U.S. service document because it was issued by the Anderson Fil-American Guerrillas, a group that identified itself as recognized by the U.S. government. And, the identification card on its face provides the time, length, and character of Mr. Tagupa's service.

The Board noted the documents Mrs. Tagupa submitted and tersely stated that "the information and evidence submitted . . . may not be accepted as verification . . .that [Mr. Tagupa] had active service." R. at 8. Although VA exercised its regulatory discretion to reject Mrs. Tagupa's documents purporting to establish her husband's service, it provided no reasons for rejecting

10

evidence that, on its face, appears to be evidence supporting service. *Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (holding that the Board must provide an adequate statement of reasons or bases "for its rejection of any material evidence favorable to the claimant"); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"). Because the Board provided an inadequate statement of reasons for rejecting favorable evidence, remand is warranted. *Tucker v. West*, 11 Vet.App. 369, 374 (1998) (finding remand appropriate where the Board has, inter alia, failed to provide an adequate statement of reasons or bases).

## D. *Capellan* Violation

Mrs. Tagupa also argues that the Board erred in failing to submit another request for verification from NPRC after she submitted information regarding her husband's place of separation from service. In *Capellan* the Federal Circuit held "that a claimant's new evidence [must] be submitted and considered in connection with a 'verification of service request from the service department.'" 539 F.3d at 1381 (quoting 38 C.F.R. § 3.203(c)). Moreover, there is no limit on the number of requests that VA shall make to the service department for service verification when a claimant fails to submit qualifying evidence of service. *Sarmiento v. Brown*, 7 Vet.App. 80, 85 (1994), *overruled on other grounds by D'Amico v. West*, 209 F.3d. 1322, 1327 (Fed. Cir. 2000). In light of the remand for VA to seek verification of service from the Department of the Army, this argument is now moot. In complying with this remand, VA should ensure that this new evidence is submitted in connection with the verification request to the Department of the Army.

## E. Unrecognized Guerrilla Service

The Board denied Mrs. Tagupa's benefits based on NPRC's reply to VA's multiple requests for information stating that Mr. Tagupa had "no service as a member of the Philippine Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces." R. at 48, 155, 159. However, VA received no information from NPRC about whether Mr. Tagupa served as a member of an *unrecognized* guerrilla group. *See* 38 U.S.C. § 107; 38 C.F.R. § 3.40 (d) (2) (ii) (defining "unrecognized guerilla service" as "service under a recognized commissioned officer only if the person was a former member of the United States Armed Forces (including the Philippine Scouts), or the Commonwealth Army") (2013); VA ADJUDICATION

11

PROCEDURES MANUAL, pt. III, subpt. iv, ch. 4, sec. B. 4.6.d (recognizing that service in a "guerrilla unit under the command of a commissioned officer of the U.S. Armed Forces (including the Regular Philippine Scouts or in the Philippine Army) will be certified by the service department as '*Unrecognized guerrilla service under . . .*' . . . by naming the officer and, if the officer was a member of the Philippine Army, giving the officer's rank and organization").

In its decision, the Board mentioned that service department certifications may establish unrecognized guerrilla service, which is qualifying service for VA compensation benefits. R. at 5 (noting that § 3.40 (d)(2) includes unrecognized guerrilla service and that this is service "under a recognized commissioned officer, who was a former member of the U.S. Armed Forces or the Commonwealth Army"). However, the Board's analysis failed to address the possibility that Mr. Tagupa served in an unrecognized guerrilla unit during World War II. Therefore, the Board provided an inadequate statement of reasons or bases for its decision, which frustrates judicial review and necessitates remand. *Allday* and *Tucker*, both *supra*.

### III.  CONCLUSION

For the reasons stated above, the Court WITHDRAWS its May 31, 2013, decision, DENIES Mrs. Tagupa's motion for leave to submit supplemental evidence, SETS ASIDE the Board's August 2, 2011, decision, and REMANDS the matter for VA to seek verification of service from the Department of the Army.

KASOLD, *Chief Judge*, concurring in part and dissenting in part: I fully agree that remand is warranted so that the Secretary can seek verification of Mr. Tagupa's service from the Department of the Army, as required by his regulation. I note, however, that I find the MOA clear in that the NPRC provides a reference service only; it may certify service department determinations in the record, but it lacks the authority to issue a service department determination that is not otherwise contained in the records it maintains. I also agree that the Board provided an inadequate statement of reasons or bases regarding whether Mr. Tagupa served in an unrecognized guerrilla unit during World War II.

I do not, however, agree with the majority's determination that the Board provided no reasons

12

for rejecting the documents submitted by Mrs. Tagupa for purposes of verifying service under 38 C.F.R. § 3.203(a). To the contrary, the Board addressed the documents Mrs. Tagupa submitted as support that her husband served with the U.S. military and found that none of the documents were official service department documents that meet the requirements of 38 C.F.R. § 3.203(a). Based on the record of proceedings, the Board's finding is plausible and not clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))); *see also* 38 C.F.R. § 3.203(a) (to establish qualifying service, documents must (1) be issued by a service department, (2) contain specified information, and (3) in VA's opinion be genuine). Moreover, the Board's reasons or bases for finding the documents inadequate to verify service are understandable and facilitative of judicial review. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").