# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-1017

Emilio T. Palomer, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

Before KASOLD, *Chief Judge,* and SCHOELEN and GREENBERG, *Judges*.

## O R D E R

Mr. Emilio T. Palomer seeks to appeal a July 10, 2013, decision of the Board of Veterans' Appeals (Board). However, he mailed his motion for reconsideration of the Board decision 133 days after the Board decision was mailed, and then filed his Notice of Appeal (NOA) 102 days after the Board Chairman denied reconsideration. The Secretary moved to dismiss the appeal because Mr. Palomer did not file either an NOA or a request for reconsideration within 120 days of the Board decision, such that the NOA he ultimately filed was untimely.[1] *See Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991) (holding that if, following a final Board decision, the claimant files a motion for reconsideration with the Board during the 120-day appeal period, the finality of the Board decision is abated); *see also* 38 U.S.C. § 7266 (providing a 120-day period in which to file an NOA).

Mr. Palomer presents three arguments why the Court should equitably toll the 120-day period in which a claimant may file a motion for reconsideration in order to abate the finality of the Board decision for purposes of timely filing an NOA: (1) The time it takes for him to send and receive mail in the Philippines constitutes an extraordinary circumstance; (2) his physical condition rendered him incapable of handling his affairs and precluded a timely filing; and (3) the Secretary provided a

---

[1] Mr. Palomer's motion for reconsideration was postmarked by the Philippine Postal Corporation on November 20, 2013, one hundred and thirty-three days after the Board decision was mailed. The Board received his motion on December 5, 2013, one hundred and forty-eight days after notice of the Board's decision. Because there is no dispute that Mr. Palomer mailed his motion for reconsideration more than 120 days after the Board decision was mailed, we do not need to decide whether VA's "postmark rule" applies to postmarks outside the United States. *See Linville v. West*, 165 F.3d 1382, 1386 (Fed. Cir. 1999) (applying VA's postmark rule to find that a motion for reconsideration postmarked by the U.S. Postal Service within the 120-day appeal period abated the finality of the Board's decision); *compare* 38 C.F.R. § 20.305(a) (2014) ("When these Rules require that any written document be filed within a specified period of time, a response postmarked prior to expiration of the applicable time limit will be accepted as having been timely filed. In the event that the postmark is not of record, the postmark date will be presumed to be five days prior to the date of receipt of the document by the Department of Veterans Affairs."), *with* 38 U.S.C. § 7266(c)(2) (providing that an NOA shall be deemed received on the "date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and mailed"); *see also Mapu v. Nicholson*, 397 F.3d 1375 (Fed. Cir. 2005) (mail sent by FedEx was not a basis for equitably tolling the time to file an NOA).

confusing notice of appellate rights letter (VA Form 4597, "Notice of Appellate Rights"). Mr. Palomer also argues that he timely filed an appeal of the Board Chairman's denial of reconsideration and the Court has jurisdiction to decide that appeal.[2] His arguments present an issue of first impression. A panel decision is warranted. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990); U.S. VET. APP. INTERNAL OPERATING PROCEDURE (IOP) I(b)(2), (4).

## I. BACKGROUND AND ARGUMENTS

On July 10, 2013, the Board issued a decision denying Mr. Palomer a one-time payment from the Filipino Veterans Equity Compensation Fund (FVECF). Mr. Palomer mailed his request for reconsideration of the Board decision on November 20, 2013, one hundred and thirty-three days after the Board decision was issued. On December 26, 2013, the Board denied his motion for reconsideration, and 82 days later, on March 18, 2014, Mr. Palomer mailed his NOA to the Court. Mr. Palomer's NOA was received by the Court 20 days later, on April 7, 2014.

As noted above, the Secretary moved to dismiss the appeal because it was untimely filed. He also argued that the Court lacks jurisdiction to review the Board Chairman's denial of reconsideration. Mr. Palomer argues that equitable tolling should apply to his case. The heart of Mr. Palomer's argument is that *Rosler* predates *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2011), which found that the 120-day appeal period for filing an NOA is not jurisdictional. Mr. Palomer contends that failing to file the motion for reconsideration within the 120-day period after the Board issued its decision does not jurisdictionally bar his appeal, and thus, equitable tolling applies to the 120-day period in which a claimant may file a motion for reconsideration in order to abate the finality of the Board decision for purposes of timely filing an NOA.

In support of his argument that his situation merits equitable tolling, Mr. Palomer relies on *Checo v. Shinseki*, 748 F.3d 1373, 1378 (Fed. Cir. 2014), and argues that just as the *Checo* homeless veteran's living situation warranted equitable tolling, Mr. Palomer's living situation warrants equitable tolling. Specifically, he notes that he lives in the Philippines, where it takes mail from the continental United States considerably longer to reach him than it does for veterans living in the continental United States.

Mr. Palomer also argues that his deteriorating eyes and hearing, as well as old age, prevented him from timely filing an appeal. In support of this argument, he notes that he must rely on a third party to relay the contents of the Board communications to him, and he was either misinformed or misunderstood the time requirements for filing his NOA. He further contends that he exercised reasonable diligence in submitting his request for reconsideration.

---

[2] On December 30, 2014, counsel for Mr. Palomer entered the case, and on January 23, 2015, he submitted a response to the motion to dismiss, and he submitted a motion to expedite proceedings. On February 12, 2015, counsel filed a motion to file a substitute response and attached such substitute response. The motion is granted and the text of the Court's order reflects the arguments in the substituted response. The motion to expedite proceedings will be denied as moot.

Additionally, Mr. Palomer contends that the Notice of Appellate Rights issued by the Board is confusing. He notes that the letter first states that there is no time limit for filing a motion for reconsideration, but then later states that there is a 120-day deadline. Given his desire to request reconsideration and the format of the notice, he asserts that he was unaware of the 120-day deadline.

Mr. Palomer further argues that even if the Court does not equitably toll the time to file his motion for reconsideration, he timely appealed the Chairman of the Board's denial of reconsideration. He contends that the Court may review denials of reconsideration when the motion is based on new evidence or changed circumstances. He further contends that the recent decision in *Tagupa v. McDonald*, 27 Vet.App. 95, 101, 103-04 (2014) (holding a request to the National Personnel Records Center (NPRC) to verify a claimant's service does not satisfy the Secretary's duty under 38 C.F.R. § 3.203 (2014), and holding that the Board erred by not addressing whether the appellant served in an unrecognized guerrilla service) constitutes a changed circumstance. Pursuant to *Tagupa*, Mr. Palomer argues that the Board erred because (1) it relied solely on the response of the NPRC in assessing his veteran status, and did not seek verification of service from the appropriate service department, and (2) the NPRC provided no information as to whether he served as a member of an unrecognized guerilla group.

## II. DISCUSSION

### A. Abatement of Finality in the Board Decision

Pursuant to 38 U.S.C. § 7266(a), an appellant has 120 days in which to appeal an adverse Board decision to the Court. In *Rosler*, the Court held that when a claimant files a motion for reconsideration with the Board during the 120-day judicial appeal period, the finality of the Board decision is abated for purposes of timely filing an NOA. 1 Vet.App. at 242. The Court further held that "[i]t is implicit in the tolling principle that the motion for reconsideration must be made within the time period for filing a judicial appeal from the decision which is the subject of the reconsideration motion. Otherwise the appeal period would already have elapsed and thus could not be tolled." *Id.* at 245.

However, in *Jaquay v. Principi*, 304 F.3d 1276, 1286-87 (Fed. Cir. 2002), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) applied the principles of equitable tolling described in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (providing that equitable tolling is generally available "where the claimant has actively pursued his judicial remedies by filing a defective pleading . . . or where [he] has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"), to find that a timely misfiled motion for reconsideration tolled the *Rosler* limitations period. The Federal Circuit stated:

> In the context of the non-adversarial, paternalistic, uniquely pro-claimant veterans' compensation system, and consistent with our decision in *Bailey* [*v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc)], the availability of equitable tolling pursuant to *Irwin* should be interpreted liberally with respect to filings during the non-adversarial stage of the veterans' benefits process. Just as the limitations period of 38 U.S.C.

§ 7266 can be stopped and reset by the timely filing of a properly addressed motion for reconsideration, *see Rosler*, 1 Vet.App. at 249, nothing in the statute or regulations at issue suggests that equitable tolling should not be available under appropriate circumstances.

304 F.3d at 1286.

Although for a short period, equitable tolling of the time to file an NOA was not permitted because the time to file was deemed jurisdictional, that understanding of the law has been rejected, and the time to appeal may be equitably tolled. *See Henderson*, *supra*; *Bove v. Shinseki*, 25 Vet.App. 136, 140 (2011) (per curiam order) (reinstating equitable tolling "within the parameters established by . . . the precedential decisions of [the Federal Circuit] and this Court prior to" the *Henderson* decision, which overturned decisions holding that the 120-day filing period could not be equitably tolled). Furthermore, although *Jaquay* did not address the situation that is presented here, we find no reason to limit the availability of equitable tolling of the *Rosler* limitations period to timely misfiled requests for reconsideration. *See Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) (noting that equitable tolling is not "'limited to a small and closed set of factual patterns'" (quoting *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005))). Indeed, the Federal Circuit has repeatedly "rejected the approach of looking to whether a particular case falls within the facts specifically identified in *Irwin* or one of [the Federal Circuit's] prior cases." *Mapu*, 397 F.3d at 1380; *see*, *e.g.*, *Sneed*, 737 F.3d at 728 (holding that attorney abandonment may justify equitable tolling); *Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) (holding that mental illness may justify equitable tolling). Succinctly stated, we hold that the finality of a Board decision may be abated even when a request for reconsideration is filed beyond the 120-day appeal period, provided the circumstances surrounding such a filing warrant equitable tolling.

Accordingly, we turn to Mr. Palomer's arguments that equitable tolling should apply to his case.

### B. Equitable Tolling

Whether a situation warrants equitable tolling is a matter to be decided on a case-by-case basis. *See Sneed*, 737 F.3d at 726. Furthermore, it is the appellant's burden to demonstrate entitlement to equitable tolling and to produce any evidence supporting his claim for equitable tolling. *See Chastain v. West*, 13 Vet.App. 296, 300-01 (2000) (appellant bears burden of demonstrating that equitable tolling is warranted), *aff'd sub nom. Chastain v. Principi*, 6 F. App'x 854 (Fed. Cir. 2001) (per curiam); *see also McCreary v. Nicholson*, 19 Vet.App. 324, 332 (2005) ("It is the appellant's obligation . . . to produce any evidence supporting his claim for equitable tolling."), *adhered to on reconsideration by* 20 Vet.App. 86 (2006). Based on the arguments presented, we find that Mr. Palomer fails to demonstrate that equitable tolling is warranted.[3]

---

[3] We note that our dissenting colleague cites Lord Ellesmere's view that a general law cannot meet every situation, *post* at ___, as well as his own opinion that equity exists to protect against narrowly prescribed rules and narrow interpretations of precedential case law, *post* at ___. We agree with both Lord Ellesmere and our dissenting colleague,

*1. Philippine Mail System*

Mr. Palomer argues that because he lives in the Philippines and mail from the United States takes longer to arrive at his home than it does for veterans living in the continental United States, his living situation is an extraordinary circumstance warranting equitable tolling, just as the veteran's homelessness in *Checo* was an extraordinary circumstance. *See Checo*, 748 F.3d at 1378-79. In support of his argument, Mr. Palomer notes the 15-day delay between when his request for reconsideration was postmarked as mailed in the Philippines to when it was marked as received by the Board. He also notes the 13-day delay between his June 27, 2014, pro se response to the Secretary's motion to dismiss and the date it was received by the Court.[4] He therefore contends that the time for filing his motion for reconsideration should be tolled for at least 14 days to account for this delay.

At the outset, we note that Mr. Palomer mailed his request for reconsideration *after* the 120-day period in which to file his NOA had passed. Accordingly, the time it took to be received by the Board is irrelevant to the 120-day equitable tolling analysis. Acknowledging, however, that it takes longer for mail to travel between the United States and the Philippines than it does for mail to travel within the United States, Mr. Palomer nevertheless fails to demonstrate that this circumstance warrants equitable tolling of the 120-day period in which to file an NOA or a request for reconsideration that would abate the finality of the Board decision.

Indeed, we note that Mr. Palomer was able to file his NOA within 102 days of the denial of his request for reconsideration, and he was able to respond to the Secretary's motion to dismiss within 38 days from when the motion was mailed. We also note that Mr. Palomer does not state when he received the Board's decision; instead, based on the pattern of outgoing mail, he speculates that he received the Board's decision on July 24, 2013, at the earliest. Although the inefficiencies in the delivery of mail between the United States and the Philippines may be a circumstance beyond Mr. Palomer's control, he fails to assert, let alone demonstrate, that he had an inadequate amount of time to consider his options and timely mail his request for reconsideration. Succinctly stated, Mr. Palomer fails to demonstrate that the time for mail to be delivered between the United States and the Philippines rises to the level of an extraordinary circumstance warranting equitable tolling. *See Sneed*, 737 F.3d at 725 ("'[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))); *Sandvik*

_____

but we also agree with William Blackstone, who is attributed in the William Blackstone, Commentaries *62 as noting that "the liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law, and . . . . make every judge a legislator, and introduce most infinite confusion . . . . "). We also note that our determination that equitable tolling is not warranted in this case is not predicated on a narrowly prescribed rule or a narrow interpretation of precedential caselaw, but on our conclusion that the facts in this case do not warrant equitable tolling.

[4] The Court observes that it is not clear from the record whether it took 13 days for Mr. Palomer's June 27th response to arrive in the United States. Although his response was received at the Court on July 10, 2014, the response was transmitted via facsimile from the Veterans Consortium Pro Bono Program. The record does not indicate when Mr. Palomer's response was received by the Veterans Consortium Pro Bono Program.

*v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam) (refusing to apply equitable tolling where Sandvik's filing was late because his lawyer sent it by ordinary mail from Atlanta less than one week before it was due in Miami); *see also Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (stating that "'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period"); *McCreary*, 19 Vet.App. at 329 (noting that at least eight Federal courts of appeal generally recognize "'extraordinary circumstances that are both beyond [a claimant's] control and unavoidable even with diligence'" (quoting *Sandvik*, 177 F.3d at 1271)).

### 2. Deteriorating Physical Condition

Mr. Palomer also argues that his age, poor eyesight, and hearing rendered him incapable of handling his own affairs and prevented him from timely filing an appeal. Equitable tolling may be warranted if a claimant's mental or physical illness renders him incapable of handling his own affairs or functioning in society. *See Barrett*, 363 F.3d at 1321 (holding that equitable tolling may be warranted if an untimely filing is "the direct result of a mental illness that rendered [a claimant] incapable of . . . handling [a claimant's] own affairs" (internal quotations and citation omitted)); *see also Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005) (extending the *Barrett* holding to all infirmities that prevent a claimant from, inter alia, handling his own affairs). However, a "medical diagnosis alone or vague assertions of mental [or physical] problems will not suffice" to support an application of equitable tolling. *Barrett*, 363 F.3d at 1321.

In this case, the facts belie his argument, as Mr. Palomer was capable of filing his NOA and responding to the Secretary's motion well within 120 days of the denial of his motion for reconsideration and the filing of the Secretary's motion to dismiss, and he does not assert that his condition was worse following issuance of the Board decision, and then improved such that he was able to timely file his other responses. Moreover, other than vague assertions of physical infirmity, Mr. Palomer offers no evidence demonstrating that his physical condition rendered him *incapable* of handling his affairs. *See Barrett*, *supra*. In sum, Mr. Palomer fails to demonstrate that his physical condition prevented him from filing his request for reconsideration within the 120-day period following issuance of the Board decision, or that his condition otherwise warrants equitable tolling. *See Sneed*, *Chastain*, and *McCreary*, all *supra*; *see also Bove*, 25 Vet.App. at 145 (physician's letter describing veteran's difficulty making everyday decisions and that his mental disorders cause him to over-think and procrastinate did not meet *Barrett*'s test); *Claiborne v. Nicholson*, 19 Vet.App. 181, 187 (2005) (physician's letters explaining that the claimant had a "severely impaired" ability to handle his own affairs did not meet *Barrett*'s "high standard" for equitable tolling).

Mr. Palomer further contends that as a result of his poor eyesight and failing health, he must rely on a third party to relay the contents of the Board communications to him. Mr. Palomer alleges that either the third party misinformed him as to the contents of the letter or he misunderstood the time period for filing his appeal. Neither argument, however, demonstrates a basis for equitably tolling the time to file. Mr. Palomer provides no information regarding the third party who may have read his Board decision, when he sought or received assistance from the third party, or what questions Mr. Palomer may have asked the third party regarding this matter, such that his reliance

on the third party precluded a timely filing. *See Sneed*, *Chastain*, and *McCreary*, all *supra*; *see also Nelson v. Nicholson*, 19 Vet.App. 548, 553 (2006) (refusing to extend equitable tolling to cases involving attorney neglect such as missing a filing deadline), *aff'd*, 489 F.3d 1380 (Fed. Cir. 2007); *Leonard v. West*, 12 Vet.App. 554, 555 (1999) (per curiam order) (refusing to grant equitable tolling where the service representative took a long time to review the claim and the U.S. Post Office closed early on the last day of the filing period).

### 3. Confusing NOA Instructions

Mr. Palomer contends that the Notice of Appellate Rights issued by the Board is confusing because it states at one point that there is no time limit for filing a motion for reconsideration, but then later states that there is a 120-day deadline. At the outset, it is noted that the Federal Circuit has held that the Notice of Appellate Rights used by the Board is adequate. *Cummings v. West*, 136 F.3d 1468, 1474 (Fed. Cir. 1998) (finding adequate an appeals notice letter where the letter did not explain that the claimant could preserve jurisdiction of the Court by filing a motion for reconsideration within the 120-day appeal period, and noting that 38 U.S.C. § 5104 required only that the appeals notice provide a "general outline of the available procedures for obtaining review of a final Board decision"), *overruled on other grounds by Bailey*, 160 F.3d at 1360.

In this case, the Notice of Appellate Rights provided the same information as the notice in *Cummings*, *supra*, as well as a correct explanation of the effect of filing a motion for reconsideration on the deadline for filing an NOA to this Court. Although the notice states that there is no time limit for filing a request for reconsideration, this statement immediately precedes a paragraph that separately addresses "**How long do I have to start my appeal to the Court?**" Motion (Mot.) to Dismiss, Exhibit 1 at 8 (VA Form 4597, Notice of Appellate Rights) (bold in original). This paragraph informs the claimant that he or she may file a request for reconsideration instead of an NOA and still have time to file an NOA, "*[a]s long as [he] file[s] [his] motion(s) with the Board within 120 days of the date this decision was mailed to [him]*." Mot. to Dismiss, Exhibit 1 at 8 (VA Form 4597, Notice of Appellate Rights) (emphasis in original). Additionally, in a separate paragraph that addresses "**How do I file a motion for reconsideration?**" the claimant is reminded that he must file a motion for reconsideration within 120 days of the Board's decision if he or she also wants to pursue an appeal to the Court. Mot. to Dismiss, Exhibit 1 at 9 (VA Form 4597, Notice of Appellate Rights) ("Remember, the Board places no time limit on filing a motion for reconsideration, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision.").

In sum, the Court finds no basis here to apply equitable tolling because Mr. Palomer fails to demonstrate that the Notice of Appellate Rights is inadequate or confusing on this issue. *See Sneed*, *Chastain*, and *McCreary*, all *supra*; *see also Cummings*, *supra*; *Smith v. West*, 13 Vet.App. 525 (2000) (holding that the assertion that language in a Board Chairman's denial of motion for Board reconsideration was confusing and misleading was insufficient, by itself or taken together with the notice of appellate rights, to trigger the application of the doctrine of equitable tolling); *Leonard*, 12 Vet.App. at 555 (holding appellant's contention that her alleged limited education and experience rendered her unable to understand the amount of time for filing an NOA was "at best a garden variety claim of excusable neglect" and refusing to apply equitable tolling) (internal quotation marks

omitted); *Schreiner v. Derwinski*, 2 Vet.App. 72, 72 (1991) (per curiam) (holding that equitable tolling does not extend to "'a garden variety claim of excusable neglect'" (quoting *Irwin*, 498 U.S. at 96)).

### 4. Overall

Based on the foregoing analysis, we find that Mr. Palomer fails to demonstrate that the delay in sending and receiving mail in the Philippines, his deteriorating physical condition, and the Board's Notice of Appellate Rights, individually or together, warrant equitably tolling the 120-day period to file a motion for reconsideration in order to abate the finality of the Board decision for purposes of timely filing an NOA. *See Sneed*, 737 F.3d at 726 (noting that "courts acting in equity have emphasized 'the need for flexibility' and 'for avoiding mechanical rules,' and have proceeded on a 'case-by-case basis'"); *see also Mapu*, *supra*.

### C. Board Chairman's Denial of Reconsideration

Mr. Palomer argues that even if the Court does not equitably toll the time to file his appeal of the July 2013 Board decision, he nevertheless timely appealed the Board Chairman's denial of reconsideration. He concedes that the Court may not normally review denials of reconsideration, however, he relies on *Patterson v. Brown*, 5 Vet.App. 362 (1993) for the proposition that when the motion is based on new evidence or changed circumstances, the Court has jurisdiction to review the Board Chairman's denial of reconsideration. He contends that the Court's decision in *Tagupa*, 27 Vet.App. at 101, presents the changed circumstances in his case, and, based on *Tagupa*, he argues that the Board erred because it relied solely on the response of the NPRC and did not seek verification of service from the appropriate service department.

Although *Patterson* held that the Court had jurisdiction over a Board Chairman's denial of reconsideration when the motion for reconsideration was based on new evidence or changed circumstances, in *Mayer v. Brown*, 37 F.3d 618, 620 (Fed. Cir. 1994), the Federal Circuit noted that in *Patterson*, our Court had jurisdiction over the underlying Board decision based on a timely filed NOA. The Federal Circuit further stated, however, that while 38 U.S.C. § 7261 "may allow the [Veterans Court] to review actions of the Chairman [of the Board] in cases where it already has jurisdiction by virtue of a timely appeal from a final [B]oard decision, it does not independently grant jurisdiction over such actions." *Mayer*, *supra*; *see also Trice v. Brown*, 9 Vet.App 245, 246 (1996) (per curiam order) (recognizing that *Mayer* overruled the *Patterson* decision regarding jurisdiction over denials of reconsideration by the Board Chairman).

Although *Mayer* discusses the Court's authority to review the Board Chairman's denial of reconsideration in terms of "jurisdiction" over Board decisions, and although the Supreme Court in *Henderson*, *supra*, held that the 120-day appeal period is not jurisdictional, but rather an important procedural rule, we find that *Mayer* continues to stand for the proposition that when an NOA is filed beyond the 120-day appeal period and equitable tolling is not warranted such that the Court declines to exercise its jurisdiction over an appeal from a Board decision, the Court does not have independent jurisdiction over an appeal from a denial for reconsideration by the Board Chairman. In other words, although the time limit for filing an NOA is not jurisdictional, the Court's subject

matter jurisdiction is limited to reviewing final decisions of the Board. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Mayer*, 37 F.3d at 619-20 (finding that a decision by the Board Chairman is not a decision of the Board, and therefore, cannot independently grant jurisdiction under 38 U.S.C. § 7252(a)).[5]

Here, Mr. Palomer untimely filed his NOA and equitable tolling is not warranted such that we decline to exercise jurisdiction over the appeal from the Board decision. Accordingly, we do not have jurisdiction over the appeal of the Board Chairman's denial of the motion for reconsideration. *See Mayer*, *supra*.

### III. CONCLUSION

Based on the information before the Court, Mr. Palomer has not demonstrated that his situation warrants equitable tolling.

Therefore, upon consideration of the foregoing, it is

ORDERED that Mr. Palomer's January 23, 2015, motion to expedite proceedings is denied as moot. It is further

ORDERED that Mr. Palomer's February 12, 2015, motion to file a substitute response is granted. It is further

ORDERED that the Secretary's motion to dismiss is granted, and the appeal is DISMISSED for lack of jurisdiction.

DATED:  March 18, 2015                                            PER CURIAM.

   GREENBERG, *Judge*, dissenting:

I dissent. The Court must decide matters of equitable tolling on a case-by-case basis. *See Ferguson v. Shinseki*, No. 13-1149, 2014 WL 463690 (U.S. Vet. App. Feb. 6, 2014) (Greenberg, J., concurring); *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005) ("equitable tolling is not limited to a small and closed set of factual patterns" and is rather decided on a "case by case basis"). This Court has been admonished for "focus[ing] too narrowly on whether [an appellant's] case fell into one of the factual patterns of past cases considering § 7266(a)." *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013). "[T]his Court is free to extend the principles of equitable tolling to new situations when warranted," *Nelson v. Nicholson*, 19 Vet.App. 548, 551 (2006), and it should do so here, so as to not exclude this diligent appellant from making his case on the merits.

---

[5] We note that the 120-day period in which to appeal a Board decision is not jurisdictional, *see* 38 U.S.C. § 7266(a); it is, however, distinct and separate from our adjudicatory authority to review final Board decisions, which is jurisdictional, *see* 38 U.S.C. § 7252(a).

The evidence reflects that the appellant never received the statutorily mandated 120 days to file an appeal because he resides in the Philippines. All the appellant's correspondence related to the matter on appeal indicates a two- to three-week delay for delivery. For example, the appellant's motion for reconsideration was postmarked by the Philippine Postal Corporation on November 20, 2013, but was received by VA 15 days later, on December 5, 2013. Additionally, the appellant's Notice of Appeal was postmarked on March 18, 2014, but was received 20 days later, on April 7, 2014. The time for delivery for these filings exceeds the 13 days by which the appellant missed the 120-day appeal period from the Board decision. The appellant states that he received the Board decision at least two weeks after it was mailed, and that statement is supported by the pattern of his other filings. The appellant had, at most, only 106 days to file his appeal.

Equitable tolling is warranted where a diligent appellant was unable to file timely. *See* JOHN NORTON POMEROY, *POMEROY'S EQUITY JURISPRUDENCE AND EQUITABLE REMEDIES*, § 419 (3d ed. 1905) ("'Nothing can call forth this court into activity but conscience, good faith, *and reasonable diligence.*'" (quoting Lord Camden, *Smith v. Clay*, (1767) 27 Eng. Rep. 418 (Ch.) 420; Amb. 645, 647) (emphasis in original)). In this case, there is no action that the appellant could reasonably have taken to speed up his receipt of the Board decision. It is irrelevant to the Court's evaluation of diligence that the appellant *could* have filed his motion within a shortened appeal period of 106 days. That the appellant filed his motion for reconsideration within 120 days of receiving that decision is a sufficient demonstration of his diligence. Where, as here, the facts indicate that the appellant's filing was untimely *because* of the mailing delay, not *in addition* to it, equitable tolling is appropriate.

During Lord Ellesmere's dispute over the roles of equity and law with Lord Coke, Ellesmere stated: "The Cause why there is a Chancery is, for that Mens Actions are so divers and infinite, That it is impossible to make any general Law which may aptly meet with every particular Act, and not fail in some Circumstances." *Earl of Oxford's Case*, (1615) 21 Eng. Rep. 485 (Ch.) 486; Rep. Ch. 1, 6. The principle that equity exists to protect against the failures of narrowly prescribed rules ought to be reflected in this Court's equitable tolling jurisprudence. That this appellant's circumstances do not conform to a narrow interpretation of the Court's precedent should only hasten the Court's expansion of its equity jurisprudence. That jurisprudence must be more inclusive so as to properly discharge the essential duty of equity: to provide relief in light of diverse and infinite circumstances for which fixed laws cannot account. *Fiat justitia ruat caelum. See Rex v. Wilkes*, (1770) 98 Eng. Rep. 327 (K.B.) 347 (Lord Mansfield); 4 Burr. 2527, 2562; *see also Somerset v. Stewart*, (1772) 98 Eng. Rep. 499 (K.B.) 509; Lofft 1, 17; *for a relevant description of general equitable principles, see also Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 499-500 (1952) ("[U]nder general principles of equity the court may require . . . so that as nearly as may be the parties will be protected and equity done, *Hartman v. Hartle*, 95 N.J. Eq. 123, 125, 122 A. 615 (Ch. 1923); *Attorney General v. Linden Cemetery Ass'n*, 85 N.J. Eq. 501, 506-07, 96 A. 1001 (E. & A. 1916); 1 POMEROY, EQUITY JURISPRUDENCE (5th ed. 1941), § 237e; 2 RESTATEMENT, TRUSTS (1935), § 291."). I dissent.